IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORTNEY **AKRIDGE**, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| RYAN MARTIN **FINNEGAN**, ) | |
| RYAN POTTS, and JARED ) | |
| PICCHIOTTINO, ) | |
| ) | |
| *Defendants.* ) | **JURY DEMAND** |

## COMPLAINT

1. Plaintiff Cortney Akridge brings this damages action under 42 U.S.C. § 1983 against Defendant Metropolitan Nashville Police Department officers Ryan Finnegan, Ryan Potts, and Jared Picchiottino. Plaintiff's claims arise out of a traffic stop and prolonged detention that deprived him of his Fourth Amendment right to be free from unreasonable search and seizure. In addition to unreasonably searching and detaining Plaintiff, Defendants also illegally retaliated against Plaintiff for exercising his constitutionally protected right to refuse to consent to a search of his vehicle, thus violating his First, Fourth, and Fourteenth Amendment rights.

## PARTIES

2. Plaintiff **Cortney Akridge** ("Plaintiff") is a 19-year-old resident of Nashville, Tennessee.

3. Defendant **Ryan Martin Finnegan** ("Defendant Finnegan") was at all times relevant to this Complaint a police officer with the Metropolitan Nashville Police Department ("MNPD").

4. Defendant **Ryan Potts** ("Defendant Potts") was at all times relevant to this Complaint a police officer with the MNPD.

5. Defendant **Jared Picchiottino** ("Defendant Picchiottino") was at all times relevant to this Complaint a police officer with the MNPD.

6. All Defendants are sued for damages in their individual capacities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### 6:37-6:38 P.M.
### THE TRAFFIC STOP

8. On Tuesday, July 24, 2012, sometime before 6:37 p.m., Defendant Finnegan observed Plaintiff's Honda Civic hatchback leaving the Village West Apartments at 4404 Tennessee Avenue.

9. At 6:37 p.m., the following exchange occurred on MNPD's radio:

| | |
|---|---|
| *First Officer:* | "Frank fifty-five." |
| *Dispatch:* | "Frank fifty-five." |
| *First Officer:* | "Ninety-three, Indiana and 47th on Frank 8047 Henry." |
| *Dispatch:* | "10-4." |
| *Second Officer:* | "Frank five-one, code four. I'm out with him." |
| *Dispatch:* | "10-4." |

10. On information and belief, the First Officer in the exchange was Defendant Finnegan, and the second officer in the exchange was Defendant Picchiottino.

11. Defendant Finnegan, who was driving an unmarked MNPD patrol car, activated his blue lights no later than 6:37 p.m.

12. Upon seeing the blue lights, Plaintiff immediately drove his car to the side of the road and parked.

13. MNPD records show the traffic stop commenced at 6:38 p.m.

14. Defendant Finnegan claimed in MNPD paperwork that Plaintiff Akridge, who was driving the vehicle, did not make a complete stop at a stop sign.

### 6:38-6:44 P.M.
### *TERRY* FRISK, REFUSAL OF CONSENT, AND SUMMONING THE CANINE

15. Without probable cause or reasonable suspicion, the Defendant officers on the scene ordered Plaintiff and then his three passengers out of the car.

16. Defendants found no weapons or other contraband on Plaintiff or any of his passengers.

17. While frisking Plaintiff during this search, one Defendant grabbed Plaintiff's genitalia and forcibly manipulated them for a period for longer than that which was required or reasonably calculated to search for weapons or contraband.

18. Defendant Finnegan asked Plaintiff for consent to search his car.

19. Mr. Akridge said words to the effect of, "I have the right to say no, right?"

20. Defendant Finnegan responded with words to the effect of, "Yes you do, but I have the right to get a canine."

21. Defendant Potts's vehicle arrived on the scene roughly five minutes after the traffic stop began, at approximately 6:43 p.m.

22. At 6:44 p.m., the following exchange occurred over police radio:

    *First Officer:*    "Frank fifty-five."
    *Dispatch:*    "Frank fifty-five."
    *First Officer:*    "Trade me cross range."
    *Second Officer:*    "52-65 on west."

| | |
|---|---|
| *First Officer:* | "Frank fifty-five to 52-65, we're at Indiana Avenue and 47th with one refusing to consent if you're available." |
| *Second Officer:* | "10-4. Headquarters send me to this call." |
| *Dispatch:* | "10-4." |

23. On information and belief, this exchange was a communication between Defendant Officers at the scene of the traffic stop and Officer Michael Bruton Hackney, an MNPD canine officer.

24. At approximately the same time as this radio communication, Plaintiff and his passengers were ordered to return to the car and roll the windows up, leaving the car turned off.

25. At 6:44 p.m. on July 24, 2012, it was above 90°.[1]

### 6:44-6:50 P.M.
### THE SECOND *TERRY* SEARCH, ISSUANCE OF THE CITATION, AND THE END OF PROBABLE CAUSE TO DETAIN PLAINTIFF

26. Officer Hackney, the canine officer, began moving toward the scene at 6:46 p.m., traveling from Murfreesboro Pike along Interstate 440.

27. Prior to Officer Hackney's arrival, Plaintiff was again ordered by one of the Defendants to exit his vehicle.

28. One of the defendants told Plaintiff words to the effect of, "I'm gonna search you again."

29. This Defendant then searched Plaintiff a second time without consent, reasonable suspicion, or probable cause, even though Plaintiff had been in view of the officers since the first pat-down.

30. The second search of Plaintiff was even more invasive and humiliating to Plaintiff than the first. The Defendant reached inside Mr. Akridge's clothing and forcefully manipulated

---

[1] *See* http://weather.philly.com/history/airport/KBNA/2012/7/24/DailyHistory.html.

*Page 4 of 10*

Case 3:13-cv-00588   Document 1   Filed 06/14/13   Page 4 of 10 PageID #: 4

each of Plaintiff's testicles and placed his finger inside Plaintiff's anus, in view of Plaintiff's passengers, and nearby neighbors who had gathered at the sight of several police cars.

31. Defendant Finnegan wrote Mr. Akridge a citation for three minor traffic offenses at 6:50 p.m.

### 6:50-7:10 P.M.
### PROLONGED DETENTION WHILE AWAITING THE CANINE UNIT

32. After the second body search of Plaintiff by one of the Defendants, Plaintiff was ordered to sit on a grassy berm in plain view of the nearby residents who were observing the flurry of police activity from their homes.

33. Plaintiff protested that he did not wish to sit on the grass for fear of dirtying his work uniform.

34. Defendants reiterated that sitting on the grass was an order, so Plaintiff complied.

35. Plaintiff and his passengers remained seized and un-free to leave for several minutes while awaiting Officer Hackney's arrival.

36. Officer Hackney arrived with his canine partner, "Ziro," at 6:58 p.m.

37. Just after 7:00 p.m., one defendant, upon information and belief, Defendant Potts, told Plaintiff words to the effect of, "This all wouldn't have happened if you woulda let us search the car."

38. Officer Hackney accompanied Ziro around Plaintiff's car in a sweep for drugs.

39. The dog did not alert.

40. Defendants detained Mr. Akridge and his passengers until no earlier than 7:10 p.m.

41. No reasonable suspicion or probable cause of criminal activity supported the detention of Mr. Akridge and his passengers for the twenty minutes between Finnegan's completion of the citation and the Defendants' release of Plaintiff.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### UNCONSTITUTIONAL SEARCH
### 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

42. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

43. Defendants conducted an unreasonable warrantless, non-consensual, non-exigent search of Plaintiff's person without probable cause in violation of the Fourth Amendment to the United States Constitution.

44. Defendants exceeded the scope of a permissible *Terry* frisk search, which is constitutionally limited to situations in which police officers have a reasonable and articulable suspicion that a suspect is armed and presently dangerous.

45. Defendants lacked reasonable suspicion that criminal activity had occurred or was about to occur that would justify such a search.

46. No separate probable cause existed for a roadside search involving multiple, lingering manual manipulations of Plaintiff's genitals and penetration of his anus.

47. Plaintiff suffered injuries, including, but not limited to, violations of his constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate cause of Defendants' illegal actions.

48. Defendants violated Plaintiff's clearly established right to be free from unreasonable searches.[2]

## COUNT II
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### UNREASONABLY PROLONGED SEIZURE
### 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

49. Plaintiff re-alleges and re-avers the preceding paragraphs, and the preceding are incorporated herein by reference.

50. The Fourth Amendment guards against seizures unreasonable in scope and duration.

51. Defendants impermissibly detained Plaintiff for longer than necessary to effectuate the purpose of their seizure, which was to cite Plaintiff for traffic violations.

52. Defendants continued to detain Plaintiff for at least twenty minutes after Defendant Finnegan issued Plaintiff a traffic citation.

53. The Fourth Amendment prohibits detentions made solely for investigatory purposes. Defendants unlawfully detained Plaintiff in order to develop probable cause. Probable cause to arrest or cite Plaintiff for any offense apart from traffic violations never materialized.

54. Defendants lacked reasonable suspicion to enlarge the scope of the original *Terry* stop.

55. Defendants also exceeded the scope of their investigatory detention by failing to limit the stop to a reasonable time using the least-intrusive investigatory means available to them.

---

[2] *See generally* Caleb Mason, *Jay-Z's* 99 Problems*, Verse 2: A Close Reading with Fourth Amendment Guidance for Cops and Perps*, 56 ST. LOUIS UNIV. L. J. 567 (2012) *available at* http://slu.edu/Documents/law/Law%20Journal/Archives/LJ56-2_Mason_Article.pdf (last visited Jun. 14, 2013).

56. Plaintiff suffered injuries, including, but not limited to, violations of his constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate cause of Defendants' illegal actions.

57. Defendants violated Plaintiff's clearly established right to be free of unreasonable prolonged seizures.[3]

## COUNT III
### VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS
### UNLAWFUL RETALIATION FOR EXERCISE OF CONSTITUTIONALLY PROTECTED RIGHT
### 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

58. Plaintiff re-alleges and re-avers the preceding paragraphs as if stated in their entirety and incorporates those paragraphs herein by reference.

59. Plaintiff had a constitutional right to refuse consent to search his vehicle.

60. Plaintiff exercised his constitutional right and refused consent to a search of his automobile.

61. As a result, Defendants retaliated against Plaintiff by detaining him for longer than necessary to complete their official business, subjecting him to a second, more invasive search of his testicles, and forced him to sit in the grass in view of nearby residents in retaliation for his refusal to search.

62. One defendant, upon information and belief, Defendant Potts, expressly stated that Plaintiff's prolonged detention would not have occurred if Plaintiff had not exercised his constitutional right to refuse consent to search his vehicle.

63. Defendants' actions were motivated as a response to Plaintiff's exercise of his constitutional rights.

---

[3] *See* note 2, *supra*, at 582–84.

64. There is no independent, legitimate reason why Defendants would have commented on Plaintiff's refusal to search or ordering him into the grass but for Plaintiff's exercise of his First Amendment rights. As such, Defendants took adverse action against Plaintiff.

65. Defendants' statements and actions would have deterred or "chilled" a person of ordinary firmness from continuing to exercise the protected right to refuse to consent to a search.

66. Plaintiff suffered injuries, including, but not limited to, violation of his constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate result of Defendants' illegal actions.

67. Plaintiff suffered automatic and presumed damages for interference with his First and Fourteenth Amendment rights as a direct and proximate result of Defendants' illegal actions.

68. Defendants violated Plaintiff's clearly established right to be free from retaliation for exercising his constitutional rights.[4]

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendants as so follows:

(1) Plaintiff requests that he be awarded all damages to which it may appear he is entitled by the proof submitted in this cause, including nominal damages and emotional distress damages.

(2) Plaintiff requests that he be awarded presumed damages for the violation of his right to free speech.

---

[4] *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10 (1998)).

(3)     Plaintiff requests that he be awarded punitive damages because Defendants acted with evil motive or intent or with reckless or callous indifference to Plaintiff's federally-protected rights.

(4)     Plaintiff requests that he be awarded reasonable expenses in this litigation, including reasonable attorney and expert fees and costs, pursuant to 42 U.S.C. § 1988 (b) and (c).

(5)     Plaintiff requests that he receive all other further and general belief to which it may appear he is entitled, the interests of justice demanding it.

(6)     Plaintiff requests a trial by jury of 12 for all so claims so triable.


DATED:     June 14, 2013            Respectfully submitted,

                                    Elliott Ozment (BPR # 4331)

                                    /s/ Tricia R. Herzfeld
                                    Tricia R. Herzfeld (BPR # 26014)
                                    R. Andrew Free (BPR # 30513)
                                    OZMENT LAW
                                    1214 Murfreesboro Pike
                                    Nashville, TN 37217
                                    Phone: (615) 321-8888
                                    Fax: (615) 321-5230
                                    Elliott@ozmentlaw.com
                                    tricia@ozmentlaw.com
                                    afree@ozmentlaw.com
                                    *Pro Bono Counsel for the Plaintiff*