IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

COURTNEY AKRIDGE )
)
v. ) NO. 3:13-0588
)
RYAN MARTIN FINNEGAN )

TO: Honorable William J. Haynes, Jr., Senior District Judge

# **R E P O R T   A N D   R E C O M E N D A T I O N**

By Order entered November 6, 2014 (Docket Entry No. 81), this action was referred to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure, to hear and determine any pretrial issues, motions, including discovery matters, to conduct any necessary conferences and hearings and to submit a report and recommendation for disposition of any motions filed under Rules 12, 15, 56, and 65 of the Federal Rules of Civil Procedure.

Presently pending before the Court are Defendant's motion for summary judgment (Docket Entry No. 53) and Plaintiff's motion for partial summary judgment (Docket Entry No. 56).[1] Set out below is the Court's recommendation for disposition of the motions.

## **I. BACKGROUND**

In the early evening of July 24, 2012, Plaintiff Cortney Akridge was driving his car in Nashville, Tennessee, and had three passengers in the car with him. After Plaintiff drove out of the

---

[1] Both parties have made several other filings relevant to the motions. *See* Docket Entry Nos. 62, 67, 68, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79, 82, and 85.

parking area of the Village West Apartments on Tennessee Avenue, Ryan Finnegan ("Finnegan"), an officer with the Metropolitan Police Department for Nashville and Davidson County ("MNPD") who was driving an unmarked police car, followed Plaintiff's car for a short period of time and then activated his blue lights to stop Plaintiff. Plaintiff stopped his car, at which time Finnegan walked to the car and told Plaintiff he had committed traffic offenses. Over the course of the next approximately 30 minutes, Plaintiff and the passengers were detained by Finnegan and other MNPD officers who had arrived at the scene.[2] During this period of time, Finnegan questioned Plaintiff on two separate occasions, questioned the passengers in the car, "patted down" Plaintiff twice, and asked Plaintiff for his consent to have his car searched, a request that Plaintiff refused. Finnegan also sent a request to MNPD dispatch that a police dog be brought to the scene, and Plaintiff and the three passengers were made to wait outside the car while the dog performed a "walk around" or "dog sniff" of the car, which did not result in a positive alert by the police dog. Plaintiff was ultimately given citations for running a stop sign, having windows that were tinted too darkly, and failing to have his driver's license, and he was then permitted to leave in his car. None of the three passengers were cited for any offense. Plaintiff was subsequently found guilty of the stop sign and window tint violations. *See* Docket Entry No. 71 at ¶ 85.

On June 14, 2013, Plaintiff filed the instant lawsuit against Finnegan, MNPD Officer Ryan Potts, and MNPD Officer Jared Picchiottino seeking damages under 42 U.S.C. § 1983 for alleged violations of his civil rights. Specifically, Plaintiff alleged that Defendants violated his Fourth Amendment rights by conducting an unreasonable search and seizure and violated his First Amendment rights by retaliating against him because he refused to consent to the search of his car.

---

[2] The parties dispute the exact length of Plaintiff's detention.

*See* Complaint (Docket Entry No. 1) at 6-9. In lieu of answers, the three Defendants filed separate motions to dismiss, based in part, on the defense of qualified immunity. *See* Docket Entry Nos. 10, 12, and 14. The Court denied the motions without prejudice, *see* Orders entered August 16, 2013 (Docket Entry Nos. 30-32), and Defendants filed notices of appeal. The parties subsequently stipulated to the dismissal with prejudice of all claims against Defendants Potts and Picchiottino and to the remand of the action for further proceedings on the claims against Defendant Finnegan, *see* Docket Entry Nos. 44 and 45, and the appeals were dismissed. *See* Docket Entry No. 46.

Plaintiff then filed an amended complaint against Defendant Finnegan (hereinafter referred to as "Defendant") seeking damages under Section 1983. *See* Docket Entry No. 47. Relying on essentially the same factual allegations contained in his original complaint, Plaintiff sets out three civil rights claims against Defendant. In Count I, Plaintiff alleges that Defendant violated the Fourth Amendment by conducting "an unreasonable warrantless, non-consensual, non-exigent search of Plaintiff's person without probable cause." *Id*. at 6-7. In Count II, Plaintiff alleges that Defendant violated the Fourth Amendment by "impermissibly detain[ing] Plaintiff for longer than necessary to effectuate the purpose of their seizure, which was to cite Plaintiff for traffic violations." *Id*. at 7-8. (Count II). In Count III, Plaintiff alleges that Defendant violated Plaintiff's First Amendment rights by "retaliat[ing] against Plaintiff by detaining him for longer than necessary to complete their official business, subjecting him to a second, more invasive search of his testicles, and forc[ing] him to sit in the grass in view of nearby residents in retaliation for his refusal to search." *Id*. at 8-9. Plaintiff demands a jury trial.

Defendant answered the amended complaint, *see* Docket Entry No. 48, and the parties have engaged in a period of discovery. Other than the parties' two dispositive motions, there are no other

pending motions. In his motion for partial summary judgment, Plaintiff agrees to dismiss Count I of his amended complaint. *See* Docket Entry No. 56 at 2 n.1. Accordingly, the only remaining claims in this action are Counts II and III.

## II. THE MOTIONS FOR SUMMARY JUDGMENT

Plaintiff seeks partial summary judgment contending that he is entitled to judgment as a matter of law on Count II. Plaintiff concedes for the purposes of the dispositive motions that Defendant had probable cause to support the initial traffic stop. *See* Docket Entry No. 57, at 5-6. However, Plaintiff argues that all material undisputed evidence and the evidence that is disputed, when viewed in the light most favorable to Defendant, establishes as a matter of law that (1) Defendant expanded the scope and duration of Plaintiff's seizure beyond the scope of the initial stop, which was to issue him a traffic ticket, and (2) Defendant's prolongation of the stop was not supported by facts providing him with objectively reasonable suspicion that Plaintiff was involved in criminal activity that warranted extending Plaintiff's detention. *Id.* at 5.

Plaintiff asserts that his detention lasted no less than 34 minutes but that Defendant had sufficient information available to quickly issue Plaintiff a traffic ticket and release him. Instead, Plaintiff contends that Defendant took purposeful actions to unreasonably expand the scope and duration of Plaintiff's traffic stop in hopes of uncovering criminal activity despite there being nothing to support a reasonable suspicion that either Plaintiff or his passengers were engaged in such criminal activity. Plaintiff asserts that the manner in which he was questioned and searched by Defendant, the request Finnegan made that a police dog be called to the scene, the accompanying delay and wait of several minutes that occurred until the police dog arrived, and the length of time

4

it took for Finnegan to actually issue the traffic citations, which Plaintiff contends happened nearly 30 minutes after he was initially stopped, are all indicia of a violation of Plaintiff's Fourth Amendment rights.

Defendant seeks summary judgment on Counts II and III. Defendant argues that his conduct throughout the stop did not violate Plaintiff's constitutional rights.[3] He contends that his request for the police dog and the subsequent police dog sniff were lawful either in connection with a valid traffic stop or because they were based on reasonable suspicion. He contends that the duration of the stop, whether construed as an ongoing traffic stop or as a *Terry*[4] stop, or combination of both, did not involve an unreasonable detention or seizure because Defendant had reasonable suspicion to continue his detention and investigation of Plaintiff based on a variety of factors that arose during the stop. Defendant argues that Plaintiff's First Amendment retaliation claim should fail on the merits under either the Fourth or First Amendment. In addition to challenging the merits of Plaintiff's claims, Defendant contends that he is entitled to qualified immunity from any damages on the claims because the law was not clearly established such that he would have known that any of his alleged conduct during the stop would have violated Plaintiff's constitutional rights. *See* Docket Entry No. 61 at 2.

---

[3] Defendant raises summary judgment arguments for Count II based on both the Fourth Amendment and the Fourteenth Amendment's due process and equal protection clauses. *See* Docket Entry No. 61 at 21-24. However, Plaintiff expressly states that he is not asserting distinct due process or equal protection claims and that Count II is brought only as a Fourth Amendment claim. *See* Docket Entry No. 73 at 17 n.21. Accordingly, the Court views Count II as asserting only a Fourth Amendment claim.

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson,* at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559,

561 (6th Cir. 1991). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 252).

### IV. ANALYSIS

To prove a claim under 42 U.S.C. § 1983, the Plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978). The parties do not contest that Plaintiff satisfies the first element for a Section 1983 claim.

As to the second element of Plaintiff's Section 1983 claims, the Court finds that genuine issues of material fact exist with respect to Count II that preclude the entry of summary judgment in favor of either party. With respect to Count III, the Court finds that summary judgment should be granted to Defendant.

A. Count II - Fourth Amendment

The detention of an individual pursuant to an ordinary traffic stop is unquestionably protected by the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996); *United States v. Winters*, 782 F.3d 289, 295 (6th Cir. 2015). Plaintiff does not

7

contest the initial stop by Defendant. Accordingly, the lawfulness of the traffic stop itself is not at issue, and the subjective motivation of Defendant for making the traffic stop is not relevant. *See United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008).

The legal issues in this action pertain to the events that occurred subsequent to the initial stop and whether Defendant's actions were reasonable. Upon the initiation of the traffic stop, the Fourth Amendment permitted Defendant to detain Plaintiff for a period of time that was reasonably necessary to issue the traffic citation. *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). Because certain matters are incident to a traffic stop, Defendant was permitted to verify Plaintiff's identify and his driver's license, determine whether there were outstanding warrants against him, and inspect the registration and proof of insurance for the car. *Rodriguez v. United States*, ___U.S.___, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015); *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010). Defendant was also permitted to make inquiries into matters unrelated to the justification for the traffic stop and to question the passengers in Plaintiff's car. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009); *Winters*, 782 F.3d at 296; *Smith*, *supra*. The Fourth Amendment, in the interest of ensuring an officer's safety in the completion of the traffic stop, also permits an officer to order the driver of a vehicle who has been lawfully detained for a traffic violation to exit the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*per curiam*).

Nonetheless, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010). In the context of a lawful traffic stop, Defendant's detention of

Plaintiff related to issuing a traffic ticket remained lawful only to the extent that it was not "prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407. *See Rodriguez*, 135 S. Ct. at 1612. Defendant's authority to detain Plaintiff for the traffic stop thus ended "when the tasks tied to the traffic infraction [were] – or reasonably should have been – completed." *Id*. at 1614. *See Townsend*, 305 F.3d at 541.

Defendant contends that his actions were reasonably related to the purpose of the original stop and that there was no unreasonable delay during the traffic stop. *See* Docket Entry No. 61 at 15. Although not explicitly stated, Defendant argues that the entirety of Plaintiff's detention was within the scope necessary for the traffic stop and, thus, was permissible.

The question of whether Defendant's conduct during Plaintiff's detention was related to the purpose of the original stop and was reasonably required to complete the traffic stop is a fact specific inquiry not subject to bright line rules. *See Everett*, 601 F.3d at 493-94; *United States v. Hill*, 195 F.3d 258, 270 (6th Cir. 1999). Thus, the total length of time Plaintiff was detained and the length of time of any particular interval within the overall detention is not determinative of the issue. *Everett*, 601 F.3d at 494. The fact that the final event of the detention was the issuance of the traffic ticket to Plaintiff is also not determinative of whether the traffic stop was lawful for the entire length of Plaintiff's detention. *See United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012); *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009). Furthermore, investigative acts such as the questioning of a driver during a traffic stop and the use of a canine dog sniff are acts that can either be viewed as permissible or can weigh against a lawful detention depending on the context in which those acts occurred. *See Johnson*, 555 U.S. at 788 (inquiries unrelated to the justification for the traffic stop are permissible so long as they do not measurably extend the duration of the stop); *Bell*, 555 F.3d

9

at 542-43 (noting that a dog sniff was proper because it did not unreasonably prolong a lawful traffic stop). Accordingly, the proper inquiry is whether the "totality of the circumstances" surrounding the stop indicates that the duration of the stop as a whole was reasonable or whether it was unreasonably prolonged. *Everett*, 601 F.3d at 494. A significant part of this inquiry involves the diligence of the officer in accomplishing the purpose of the traffic stop, i.e., to ascertain whether a traffic violation occurred and, if necessary, to issue a ticket. *Id.* For example, an impermissible lack of diligence exits when the totality of the circumstances, viewed objectively, show that the officer "definitively abandoned the prosecution of the traffic stop and embarked upon another sustained course of investigation." *United States v. Cochrane*, 702 F.3d 334, 341 (6th Cir. 2012) (*quoting Everett*, 601 F.3d at 495).

After review of the parties' evidence and arguments on this issue, the Court finds that genuine questions of material fact exist that preclude summary judgment for either party as a matter of law on this issue. A plausible factual and legal argument can be made by Plaintiff that 1) the traffic citation at issue was minor and could have, and should have, been completed by Defendant and the traffic stop thus ended well prior to the ultimate conclusion of Plaintiff's detention and prior to several of the intrusive actions that occurred subsequent to Defendant's initial questioning of Plaintiff, and 2) that some of the actions taken by Defendant, i.e, the second round of questioning by Defendant, the two pat down searches, Defendant's request for a police dog, and the resulting wait for the police dog to arrive and conduct the dog sniff, were outside the scope of the purpose of the traffic stop and unreasonably prolonged the traffic stop. *See Stepp*, 680 F.3d at 662-64. On the other hand, Defendant has set forth factual explanations for the actions he took during Plaintiff's detention and for his contention that the actions were reasonably related to the purpose of the traffic

10

stop. However, Plaintiff disputes the factual basis for some of these explanation. *See for example* Docket Entry No. 71 at ¶¶ 5, 13, 15, 16, 20, 22, 31, 37, 38, 48, 49, 50, 51, and 68. The factual disputes presented by the parties are hotly disputed and must be resolved by the jury. Further, the ultimate question of whether Defendant acted diligently to accomplish the purpose of the traffic stop or whether he ceased to pursue the traffic stop and instead began to focus on investigating other possible criminal activity that was beyond the scope of the traffic stop and, thus, unreasonably prolonged the duration of the traffic stop is a question for the jury.

Defendant's second argument for summary judgment on Count II is that, during the course of the traffic stop, he developed a reasonable suspicion of criminal activity that justified Plaintiff's continued detention and further investigation. Thus, Defendant argues that, even if Plaintiff was detained longer than necessary for the traffic stop, his detention was nonetheless permissible while Defendant engaged in a brief investigation of other criminal activity based upon his reasonable suspicion. Defendant sets out ten facts which he contends support a conclusion that he had reasonable suspicion to extend the traffic stop. *See* Docket Entry No. 61 at 17-18. Although not explicitly stated, it appears that Defendant contends that these facts gave him a reasonable suspicion of possible criminal activity related to drugs or weapons.

An officer can extend a traffic stop if something occurred during the stop that causes the officer to have a reasonable suspicion of criminal activity. *Winters*, 782 F.3d at 297; *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005). *See Rodriguez*, 135 S.Ct. at 1615 (officer may prolong a stop based on "the reasonable suspicion ordinarily demanded to justify detaining an individual"). In determining whether such reasonable suspicion exists, the Court looks at the totality of the circumstances and whether the officer had specific and articulable facts supporting the reasonable

suspicion. *Stepp*, 680 F.3d at 661. Reasonable suspicion "is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The Court should view the evidence offered in support of reasonable suspicion "using a common sense approach, as understood by those in the field of law enforcement." *Richardson*, *supra*.

The Court finds that there are factual questions concerning whether reasonable suspicion of other criminal activity existed that created a lawful reason for Defendant to continue to detain Plaintiff beyond the limits of a permissible traffic stop. Plaintiff specifically disputes the factual basis for several of the factors articulated by Defendant as the support for his alleged reasonable suspicion. *See for example* Docket Entry No. 71 at ¶¶ 5, 13, 15, 16, 20, 22, 31, 37, and 38.[5] These factual disputes raise genuine issues of material fact that must be resolved by the jury because they are germane to the ultimate legal issues required to resolve Count II. Further, both parties raise plausible factual and legal arguments supporting their positions. Given the totality of the circumstance that must be reviewed and the fact that genuine issues of material fact exist concerning these circumstances, neither party is entitled to summary judgment as a matter of law on this issue.

In light of the Court's analysis of Count II as set out *supra*, Defendant's assertion of qualified immunity as to Count II lacks merit. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate

---

[5] The Court notes that, although Plaintiff also argues that the determination of reasonable suspicion should not include consideration of evidence related to the passengers in his car, *see* Docket Entry No. 57 at 15 and Docket Entry No. 79 at 17-18, facts pertaining to the passenger in a car fall within the totality of the circumstances that can support reasonable suspicion to detain the driver of a car. *See Stepp*, 680 F.3d at 665.

clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). The qualified immunity analysis involves two prongs: (1) do the facts alleged show Defendant's conduct violated a constitutional right; and (2) was the right at issue "clearly established" at the time of Defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The Court's recitation of the legal authorities above shows that the rights at issue, i.e., the right to not have a traffic stop unlawfully prolonged and the right to not be detained for investigative purposes without a foundation of reasonable suspicion, were clearly established by the dates of the events at issue in this action. The contours of those Fourth Amendment rights were sufficiently clear that a reasonable officer in Defendant's position would have understand that the actions he is alleged to have taken violated those rights. *See Harris v. City of Circleville*, 583 F.3d 356, 366–67 (6th Cir. 2009). Furthermore, because there are genuine issues of material fact regarding Defendant's actions that must be resolved by the jury, the Court cannot say that the alleged facts would not be sufficient to support a conclusion that Defendant's conduct violated Plaintiff's Fourth Amendment rights. Accordingly, Defendant is not entitled to summary judgment on the basis of qualified immunity, and Count II should proceed to the jury. *See Pillow v. City of Lawrenceburg, Tenn.*, 319 Fed.App'x 347, 351 (6th Cir. 2008).

B. Count III - First Amendment

In Count III, Plaintiff contends that Defendant retaliated against him in violation of Plaintiff's First Amendment rights after Plaintiff expressed his refusal to consent to the search of his car. The

13

alleged retaliatory actions are the continued detention of Plaintiff subsequent to his refusal to consent to the search of the car, Defendant forcing Plaintiff to wait in his car on a hot evening after Plaintiff refused consent to the car search, the second pat down search of Plaintiff, a search which Plaintiff contends was excessive and humiliating, and Plaintiff being required to sit on a street curb in view of other people while waiting for the dog sniff and detention to be completed. *See* Docket Entry No. 73, at 17-19. In support of his claim, Plaintiff points to an alleged statement made by another officer at the scene that "[t]his would never have happened if you had let us search the car." *Id*. at 18 n.23. Based upon these events, Plaintiff contends that he satisfies the elements for a First Amendment retaliation claim by showing that (1) he engaged in protected conduct, (2) adverse actions were taken against him after the protected conduct that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) a causal connection exists between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388-94 (6th Cir. 1999) (en banc).

The Court finds that summary judgment should be granted to Defendant on the basis of qualified immunity. Assuming for the purposes of Defendant's motion that the alleged facts and disputed facts, when viewed in the light most favorable to Plaintiff, are sufficient to show that a violation of Plaintiff's First Amendment right to be free from retaliation occurred, the Court finds that the contours of the right were not sufficiently clear under then existing law that a reasonable officer in Defendant's position would have understood that his conduct violated Plaintiff's right to be free from retaliation. *See Harris*, 583 F.3d at 366–67.

In order for a constitutional right to be clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Peter*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton*,

14

483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotations omitted)). "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Bd. of Educ. of Harlan Cnty., Ky.*, 118 F.3d 507, 515 (6th Cir.1997) (citation and internal quotation marks omitted).

As Plaintiff points out, there are numerous cases clearly establishing prior to July 24, 2012, the general First Amendment right to be free from retaliation for protected speech. *See* Docket Entry No. 73 at 20-21, and Docket Entry No. 85 at 2-3. Further, the case law noted by Plaintiff also clearly establishes a right to be free from arrest or detention as a consequence of expressing views protected by the First Amendment. *See Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007); *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) *Hutten v. Knight*, 2012 WL 246302, at *9 (M.D. Tenn. Jan. 26, 2012) (Sharp, J.).[6] However, the Court finds that these cases would not have made it clearly apparent to an officer in Defendant's position that his conduct was unlawful. In each of these cases, the seizure or arrest itself was alleged to have been initially precipitated upon the plaintiff's expression of opinions or viewpoints protected by the First Amendment, i.e., driving a truck that displayed anti-abortion messages and images, *Ctr. For Bio-Ethical Reform, Inc.;* uttering an obscenity in a public meeting, *Leonard*; attempting to file a complaint at the police station, *Hutten*. Other relevant cases likewise involve an alleged retaliatory

---

[6] Cases decided after the events at issue in this case cannot be used to clearly establish Plaintiff's rights. Further, because a right is clearly established only if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point, *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002), the cases from other districts cited by Plaintiff are not relevant.

arrests precipitated upon protected speech. *See Kennedy v. City of Villa Hills, Ky.*, 636 F.3d 210 (6th Cir. 2011) (plaintiff was arrested after calling a police officer an insulting name); *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir. 2002) (plaintiff was arrested after insulting a police officer inside police department building).

Certainly, a public official can "still be on notice that [his] conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Nonetheless, the unlawfulness of his conduct must have been clearly apparent even if the precise conduct at issue had not previously been held unlawful. The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case. *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990).

The alleged retaliatory conduct of Defendant occurred subsequent to a lawful traffic stop that was unrelated to any First Amendment conduct on the part of Plaintiff. Further, the alleged retaliatory actions were events routinely associated with a continued detention and/or investigatory stop, and Plaintiff was not arrested. Plaintiff has not pointed to a case involving alleged retaliatory actions taken after a plaintiff's refusal to give consent to a car search that occurred incident to a lawful traffic stop or pointed to a case that is analagous to the instant case. Pre-existing law did not clearly establish that a police officer in Defendant's position would have know that his alleged conduct was unlawful under the factual circumstances of this case. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's First Amendment claim.

# R E C O M M E N D A T I O N

For the reasons set out herein, the Court respectfully RECOMMENDS that:

1) Plaintiff's motion for partial summary judgment (Docket Entry No. 56) be DENIED;

2) Defendant's motion for summary judgment (Docket Entry No. 53) be DENIED as to Count II and GRANTED as to Count III;

3) Count I of the amended complaint be DISMISSED pursuant to Plaintiff's request; and

4) this action be set for a jury trial on Count II of the amended complaint.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge