IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CORTNEY AKRIDGE, )
)
Plaintiff, )
) No. 3:13-cv-00588
v. ) Senior Judge Haynes
)
RYAN MARTIN FINNEGAN, )
)
Defendant. )

**MEMORANDUM**

Plaintiff, Cortney Akridge, filed this action under 42 U.S.C. § 1983 against the sole remaining Defendant,[1] Ryan Martin Finnegan, a Metropolitan Nashville Police Department ("MNPD") officer. Plaintiff asserts Fourth Amendment claims for unreasonable search and unreasonably prolonged seizure, and a First Amendment retaliation claim for his refusal to consent to a search of his vehicle. (Docket Entry No. 47 at ¶¶ 42-68). Plaintiff's claims arise out of a traffic stop during which the Defendant initially stopped Plaintiff for a traffic violation, but then requested a canine officer to perform a dog sniff of Plaintiff's vehicle, resulting in the alleged prolonged seizure. Defendant, however, only issued Plaintiff citations for minor traffic violations. (Docket Entry No. 71 at ¶ 84).

The Defendant filed his motion for summary judgment on all claims. (Docket Entry No. 53). Plaintiff filed a motion for partial summary judgment in which he agreed to dismiss his unreasonable search claim, and sought judgment on his claim on unreasonably prolonged seizure. (Docket Entry No. 56 at 1, 2 n.1).

---

[1] In an earlier appeal, upon Plaintiff's stipulation (Docket Entry No. 45), the Sixth Circuit dismissed with prejudice Plaintiff's claims against Defendants Ryan Potts and Jared Picchiottino (Docket Entry No. 46).

Before the Court is the Magistrate Judge's Report and Recommendation (Docket Entry No. 86) recommending: (1) that Plaintiff's partial motion for summary judgment (Docket Entry No. 56) be denied due to material factual disputes; (2) that Defendant's motion for summary judgment (Docket Entry No. 53) be denied on Plaintiff's Fourth Amendment claim for unreasonably prolonged seizure due to material factual disputes, but granted on Plaintiff's First Amendment retaliation claim on qualified immunity grounds; and (3) that Plaintiff's unreasonable search claim be dismissed at Plaintiff's request. In his objections to the Report and Recommendation (Docket Entry No. 89), the Defendant argues that the Magistrate Judge erred in denying Defendant's motion for summary judgment on Plaintiff's unreasonably prolonged seizure claim. In response, Plaintiff contends that the Court should adopt the Report and Recommendation in its entirety and did not object to the Magistrate Judge's recommendation that Plaintiff's retaliation claim be dismissed. (Docket Entry No. 93).

The Defendant's specific objections are, in essence: (1) that his investigatory activities did not unreasonably extend the traffic stop beyond its initial scope, (Docket Entry No. 89 at 17-22); (2) that, even if the scope and duration of the stop extended beyond the initial purpose, such extension was supported by reasonable suspicion, id. at 23-28; and (3) that, even if there were a constitutional violation, he is entitled to qualified immunity because the violation did not violate a clearly established constitutional right of which a reasonable officer would have known, id. at 16, 22, 28. Defendant also argues that Plaintiff's Fourth Amendment prolonged seizure claim fails "because [Plaintiff] could not legally operate the vehicle without having a driver's license in his possession." (Docket Entry No. 89 at 19-20).

Upon de novo review, the Court **ADOPTS** the Magistrate Judge's Report and

2

Recommendation. For the reasons set forth below, the Court concludes that material factual disputes exist to preclude summary judgment on Defendant Finnegan's qualified immunity defense and Plaintiff's claim for unreasonably prolonged seizure. These material factual disputes exist on whether Defendant had reasonable suspicion of criminal activity to expand the scope of the initial traffic stop beyond issuing traffic citations. In addition, the "mere fact that [Plaintiff] *could* [have] be[en] arrested" did not remove his Fourth Amendment rights. See Bennett v. City of Eastpointe, 410 F.3d 810, 829 (6th Cir. 2005) (citing Knowles v. Iowa, 525 U.S. 113, 117-19 (1998)).

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). The opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

For his § 1983 claim, Plaintiff must prove a violation of a right secured by the Constitution or laws of the United States by a person acting under the color of state law." Burley v. Gagacki, 729 F.3d 610, 619 (6th Cir. 2013). It is undisputed that Defendant acted under color of state law during the traffic stop.

As to Defendant Finnegan's qualified immunity defense, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982)). In Pearson, the Supreme Court clarified that the two-prong test for qualified immunity requires Plaintiff to show that: (1) based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred, and (2) the violation involved a clearly established constitutional right of which a reasonable person would have known. See Brown v. Lewis, 779 F.3d 401, 411-12 (6th Cir. 2015) (internal quotations omitted). "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity." Id. at 412 (citing Pearson, 555 U.S. at 236). Yet, an award of qualified immunity is inappropriate where there is a material factual dispute on the claim for which qualified immunity is sought. See Johnson v. Jones, 515 U.S. 304, 313 (1995).

As to the "clearly established" prong, as the Magistrate Judge noted, "the right to not have a traffic stop unlawfully prolonged and the right to not be detained for investigative purposes without a foundation of reasonable suspicion[] were clearly established by the dates of the events at issue in this action." (Docket Entry No. 86 at 13); see Illinois v. Caballes, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); see also United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002) ("To detain [a] motorist any longer than is reasonably necessary to issue [a] traffic citation, . . . [an] officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct.").

Thus, to overcome Defendant Finnegan's qualified immunity defense, Plaintiff "must show that 'based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred.'" Brown, 779 F.3d at 411 (quoting Sample v. Bailey, 409 F.3d 689, 695 (6th Cir. 2005)).

Defendant argues that his investigatory activities incident to the traffic stop did not violate Plaintiff's Fourth Amendment right, even if reasonable suspicion did not exist. "Once the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." United States v. Blair, 524 F.3d 740, 752 (6th Cir. 2008) (internal quotations and citations omitted). An officer's conduct during a traffic stop is judged by an objective reasonableness standard, considering the "totality of the circumstances." United States v. Everett, 601 F.3d 484, 494 (6th Cir. 2010). In assessing the scope and duration of a traffic stop, "the overarching consideration is the officer's diligence" in "ascertaining whether the suspected traffic violation occurred, and, if necessary, issuing a ticket." Id. An officer's inquiries unrelated to the justification for the traffic stop are not unreasonable as long as "those inquiries do not measurably extend the duration of the stop." United States v. Stepp, 680 F.3d 651, 662 (6th Cir. 2012) (citing Everett, 601 F.3d at 490). Whether the stop is unreasonably prolonged depends on "both the duration of the extraneous questioning and its subject matter." Id. at 662 (citing Everett, 601 F.3d at 494). "Context-framing questions" and "questions directed toward officer safety" rarely suggest a lack of diligence, while "definitively abandon[ing] the prosecution of the traffic stop and embark[ing] on another sustained course of investigation" without reasonable suspicion "would surely bespeak a lack of diligence." Everett, 601 F.3d at 494-95.

Viewing the evidence in the light most favorable to Plaintiff, as required on the Defendant's motion for summary judgment, the Court finds that genuine issues of material fact exist as to whether Defendant unreasonably prolonged the initial stop beyond ascertaining whether Plaintiff ran a stop sign and had overly tinted windows, "and if necessary, issuing a ticket." Id. at 494. Defendant

describes the stop as thirty minutes at most. (Docket Entry No. 89 at 14). Plaintiff contends that the traffic stop lasted "no less than 34 minutes." (Docket Entry No. 93 at 2). Yet, the length of time is not determinative and must be considered in the context of the stop as a whole. Everett, 601 F.3d at 494.

After Defendant stopped Plaintiff, he asked Plaintiff a few questions and conducted a computer search of Plaintiff for a valid driver's license and any outstanding warrants. At that point, the Defendant had all the information necessary to issue a traffic citation. See Blair, 524 F.3d at 752. From that point, Defendant then asked Plaintiff to step out of the vehicle for a "pat-down" and questioned Plaintiff about guns, drugs, and weapons. Defendant requested Plaintiff's consent to search Plaintiff's vehicle that Plaintiff declined. Defendant ordered Plaintiff to return to his vehicle, and radioed dispatch for a canine search of Plaintiff's vehicle. Before the canine officer arrived, Defendant asked Plaintiff to get out, and conducted a second and more invasive search of Plaintiff. Ordering a driver out of a vehicle during a traffic stop, requesting consent to search the vehicle, and calling for a dog sniff can be reasonable, if the officer is otherwise delayed from completing the purpose of the initial stop. See United States v. Bell, 555 F.3d 535, 541-43 (6th Cir. 2009) (finding no unreasonable delay where officers were waiting for results of a background check and wrote a warning while asking questions). Yet, a reasonable jury could conclude that Defendant "definitively abandoned the prosecution of the traffic stop and embarked on another sustained course of investigation" based on Defendant's multiple rounds of questions and searches. See Everett, 601 F.3d at 494.

Next, Defendant argues that he had reasonable suspicion of criminal activity to conduct an investigatory detention beyond the original mission of issuing traffic citations. Reasonable suspicion

depends on "the totality of the circumstances." United States v. Richardson, 385 F.3d 625, 630 (6th Cir. 2004) (citing United States v. Orsolini, 300 F.3d 724, 728 (6th Cir. 2002)). To support reasonable suspicion, "[t]he officer must point to 'specific and articulable facts' that are 'more than an ill-defined hunch.' [The Court] review[s] the evidence with a 'common sense approach, as understood by those in the field of law enforcement.'" Stepp, 680 F.3d at 664 (quoting Richardson, 385 F.3d at 630).

Defendant argues that six factors "that are not in genuine dispute," separate from the traffic violations, supported reasonable suspicion: (1) Plaintiff's vehicle was registered to an address not in the neighborhood where the stop occurred; (2) no one in the vehicle produced identification for Defendant; (3) Plaintiff's previous police field interview reflected that his brother had gang ties; (4) Plaintiff and the passengers had some criminal history; (5) the apartment complex near the stop was a "'hot spot' within a 'hot spot' known for drug and gang activity"; and (6) Plaintiff was wearing a security guard uniform shirt that was much too big. (Docket Entry No. 89 at 24-25). Plaintiff disputes the factual bases or legal relevance of all six factors. (Docket Entry No. 93 at 12-17).

Plaintiff's vehicle registration to an address in the same city that is different from the location of the stop, may be found not to constitute reasonable suspicion. See United States v. Bonilla, 357 Fed.Appx. 693, 698 (6th Cir. 2009) (finding no reasonable suspicion where the officer's stated factors for reasonable suspicion included an out-of-state license plate); but see United States v. Huff, No. 12-5581, 2015 WL 6743477, at *6 (6th Cir. 2015) (finding reasonable suspicion based in part on an out-of-state license plate where the officer was briefed about a potential threat from that specific location). Here, the Court concludes that a jury may find this factor not to carry any weight because Defendant was not aware of any information tying Plaintiff's address to suspected criminal

activity in the area.

Considering the proof in a light most favorable to Plaintiff, as required for the Defendant's motion for summary judgment, at the time of the stop, Defendant verified after the initial round of questioning that Plaintiff did not have a valid driver's license on his person and rightfully cited Plaintiff for this infraction. See Tenn. Code Ann. § 55-50-351. As to the passengers, the Defendant has not pointed to any Tennessee law requiring automobile passengers to carry identification. Thus, the Court concludes that a jury may not find this factor to be a strong indicator of criminal activity beyond a traffic offense.

As to the Plaintiff's brother's cited gang ties, reasonable suspicion "requires that 'the detaining officer[] have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Johnson, 620 F.3d 685, 692 (6th Cir. 2010) (emphasis added) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Thus, a jury could find that Plaintiff's brother's gang affiliation does not provide reasonable suspicion of criminal activity by Plaintiff.

As to the criminal histories of Plaintiff and the passengers, "cases on the role of criminal history in the reasonable-suspicion calculus, as with other factors, often point in both directions." Stepp, 680 F.3d at 667. The parties dispute the existence and extent of Plaintiff and the passengers' criminal histories. The Defendant asserts that Plaintiff had "some minor misdemeanor charges" but not a "significant criminal history." (Docket Entry No. 71 at ¶ 20). Plaintiff submits that he had a single "adult Class C misdemeanor arrest (trespassing)" and that the police computer did not show a conviction on that charge. (Docket Entry No. 93 at 14). As to Defendant's reliance on Plaintiff's juvenile record, Plaintiff asserts that "the information available to Defendant at the time showed that

only *one* juvenile arrest—and indeed, only one arrest overall—resulted in a conviction against [Plaintiff]." Id. As to Plaintiff's passengers, Plaintiff argues that one occupant had "two misdemeanor *juvenile* [] arrests from five years earlier (disorderly conduct) but no guilty adjudications, and no convictions as an adult." Id. at 14-15.

An officer's awareness of past criminal history "by itself, does not create a reasonable suspicion that criminal activity is *currently* afoot, which is what the Supreme Court requires." Joshua v. DeWitt, 341 F.3d 430, 446 (6th Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Criminal history is more likely to support reasonable suspicion where an officer has knowledge of reports that are "specific and related to the same suspicions that the officer was developing . . . ." See Stepp, 680 F.3d at 667. Here, Defendant told Plaintiff that he initiated the stop because it was a drug and gang-related area, and because Plaintiff ran a stop sign and his window tints appeared too dark. The Plaintiff's and the passengers' criminal histories and criminal reports were not drug or gang-related. Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that a jury could find that the criminal histories of Plaintiff and the passengers do not support reasonable suspicion of present criminal activity.

Plaintiff also disputes that the apartment complex near the stop was a "'hot spot' within a 'hot spot' known for drug and gang activity," stating that "Defendant has produced no evidence—aside from his own self-serving testimony—that the Metro Nashville Police had officially determined that the area of the traffic stop was such a crime-ridden area . . . ." (Docket Entry No. 93 at 15). A police officer's factual inferences should be given "due weight," United States v. Luqman, 522 F.3d 613, 616 (6th Cir. 2008) (citing United States v. Marxen, 410 F.3d 326, 331-32 (6th Cir. 2005)), but "a given locale [that] is well known for criminal activity will not by itself justify a *Terry*

stop, although it may be taken into account with other factors." United States v. Blair, 524 F.3d 740, 751 (6th Cir. 2008) (citing United States v. Martin, 289 F.3d 392, 397 (6th Cir. 2002). Presence in a high-crime area is a "context-based factor[] that would [] pertain[] to anyone" in the area. See United States v. See, 574 F.3d 309, 314 (6th Cir. 2009). Thus, the Court concludes that a jury could find that Plaintiff's location near a "hot spot" known for drug and gang activity "should not be given undue weight" when considered with other facts in dispute.

Finally, the Defendant argues that Plaintiff was wearing a security guard uniform shirt that appeared too large giving the Defendant concern that Plaintiff might be "wear[ing] a disguise" for use in a crime. (Docket Entry No. 89 at 25). The Court concludes that Defendant's stated concern cannot support reasonable suspicion because it is more akin to an "ill-defined hunch" rather than an "objective basis for suspecting [Plaintiff] ... of criminal activity." See Richardson, 385 F.3d at 631. When stopped, Plaintiff had on a security badge and name tag, and gave Defendant his security guard license when questioned about his work. Defendant's subjective suspicion of Plaintiff's loose clothing is not an objective fact to give rise to reasonable suspicion that Plaintiff was engaged in criminal activity.

Thus, the Court finds that material factual disputes exist on whether Defendant had reasonable suspicion of criminal activity to expand the scope of the initial traffic stop beyond its original mission of issuing traffic citations. As the Sixth Circuit remarked:

> Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the [Defendant] points to several factors that this court has "recognized as valid considerations in forming reasonable suspicion," they may not together provide reasonable suspicion if "they are all relatively minor and subject to significant qualification," particularly where the "case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases."

Bell, 555 F.3d at 540 (quoting Townsend, 305 F.3d at 545). Here, a reasonable jury could find, using a "common sense approach, as understood by those in the field of law enforcement," that Defendant's stated factors were not sufficiently "specific and articulable" to support a reasonable suspicion of criminal activity. See Stepp, 680 F.3d at 664. As the Magistrate Judge noted, "[t]he factual disputes presented by the parties are hotly disputed and must be resolved by the jury." (Docket Entry No. 86 at 11).

For these collective reasons, the Court concludes that Defendant Finnegan is not entitled to summary judgment on Plaintiff's unreasonably prolonged seizure claim.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of February, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge